(Superior Court of Cincinnati.—*General Term*).

THE CITY OF CINCINNATI, FOR THE USE OF JOHN F. DETERS *v.* REES E. McDUFFIE ET AL.

———

*The Trunk Act* [84 *Ohio Laws,* 75] *construed.*

1. The act entitled "An act to provide for the construction of trunk sewers in cities of the first grade of the first class," passed March 12, 1887, (84 Ohio Laws, 75), is limited in its application to the construction of trunk sewers, and does not apply to lateral or branch sewers.

2. The act confers upon the board of public affairs not only administrative power in the construction of such trunk sewers, but legislative power as well, to pass the resolution declaring it necessaey to improve, the ordinance to improve, and the ordinance to contract.

3. A demurrer will lie to a petition for the recovery of an assessment under the trunk sewer act which does not contain allegations sufficiently descriptive of a trunk sewer.

(Decided October 30, 1894.)

———

HUNT, J.

This case comes before the court on reservation from the Special Term, and involves a construction of the Trunk Sewer act, and relates to the jurisdiction and powers of the board of public affairs under the act.

The suit was brought to recover from the abutting owners an assessment levied against them by the city of Cincinnati for the construction of sewers in front of their premises, and to enforce the lien thereof, which assessment was certified by the city to the contractor who built the sewers, John F. Deters, for collection in part payment of the cost of such sewers. The petition is in the ordinary and usual form of such petitions. A general demurrer was filed to the petition below by certain defendants in this case, and in other cases brought by the same plaintiff in the same

cause of action, and the question before the court involves a construction of the act entitled "An act to provide for the construction of trunk sewers in cities of the first grade of the first class," passed March 12, 1887, (84 Ohio Laws, 75). The claim of counsel for the defendant is that the board of public affairs had no power to pass a resolution and ordinance to improve, but that in order to be valid the resolution and ordinance should have been passed by council.

It is alleged in the petition that a resolution declaring it necessary to improve was passed by the board of public affairs on the twenty-ninth day of August, 1888, and that an ordinance to improve was passed by the board of public affairs on the second day of November, 1888.

The trunk sewer act was first passed April 18, 1883, (80 Ohio Laws, 184). This act was repealed and a new act substituted March 12, 1887, (84 Ohio Laws, 75). This act was again amended April 13, 1889, (86 Ohio Laws, 297); but this last amendment, having been passed subsequently to the proceedings of this case, it can have no effect upon the questions involved.

It is urged by counsel for defendants that the fact that when the act of April 6, 1889, (86 Ohio Laws, 213–215, sec. 2406a), was passed, the legislature, while conferring upon the board of public affairs the power to take all the proceedings subsequent to the passage of an ordinance to improve, did not see fit to give to the board of public affairs the legislative power as well, shows that it was not the policy of the legislature to take away from the council and give to the board of public affairs any legislative power, but simply to grant to the board additional powers and duties which were ministerial in their nature, and which had theretofore been exercised by council. It must be remembered, in this connection, that section 2 of the act, passed April 6, 1889, (86 Ohio Laws, 214), provides that nothing herein shall be so construed as to repeal or affect "The Trunk Sewer Act," passed March 12, 1887. The chief purpose of that law was to authorize cities of the first grade of the first class to make assessments for sewers on the ten-year plan, and to issue its bonds and pay the contractor, and then, itself, collect the assessments through the city auditor. It seems that the city has acted under it in but few instances, but the old practice of levying the assessments payable in one installment which is given to the contractor to collect, is generally followed.

It is true that there is a difference between the legislation consisting of the resolution and ordinance to improve, and such as making the contract and passing the assessment ordinance. The former acts are clearly fundamental and jurisdictional, while the latter are more of an administrative character. It should clearly appear, too, that it was the intention of the legislature to withdraw such power from the body which is permanently legislative it its character, and give it to another body which is primarily administrative.

Section 5 of this law provides that " in making such improvements, the board of public affairs shall be governed by the law relating to the construction of sewers in such city, and the condemnation and appropriation of property therefor, except that the said board of public affairs shall have and exercise all the powers and perform all the duties of council in the prosecution of said work, or furnishing materials therefor, the making and levying assessments therefor * * *; it being the intention and meaning hereof, that in all such improvements it shall not be necessary to have the action or concurrence of council in any of said proceedings."

It is urged by counsel for the demurrer that the language of section 5, to-wit: " Except that said board of public affairs shall have and exercise

all the powers and perform all the duties of council in the prosecution of said work or purchasing materials therefor, the making and levying assessments," etc., confers upon the board of public affairs only power to prosecute the work after the council has passed the necessary resolution to improve, and the ordinance to improve and resolution to contract. The clause, however, should be read in connection with the language which just precedes it, where it is provided that "in making such improvements, the board of public affairs shall be governed by the laws relating to the construction of sewers in such cities, and the condemnation and appropriation of private property therefor." This reference to the appropriation of private property can refer only to the passage of the condemnation ordinance. There was no necessity for any reference to the condemnation of private property, if the legislature intended to limit the operation to the prosecution of the work, since the steps in such condemnation proceedings consist only of the passage of the ordinance to condemn, the institution of the suit in court through the corporation counsel in pursuance of the ordinance, and, after judgment, the payment of the money. The payment of the money by the board of public affairs was already authorized by the act passed April 20, 1881, (78 O. L. 258). This was long before the enactment of the Trunk Sewer Act. It is fair to infer that the only purpose of mentioning the condemnation and appropriation of private property was to confer upon the board of public affairs the right to pass this condemnation ordinance.

It is the claim of counsel for the plaintiff that this law gives to the board of public affairs the jurisdiction and power of ordering and constructing all sewers—lateral and branch; but the whole tenor of the act as well as the title shows that the act relates to trunk sewers, and when, in section 4 of the act the language "such additional sewers" is used, it meant "such additional trunk sewers", other than those already begun which the board of public affairs was authorized to finish. A reasonable construction of the whole act shows that it was the legislative intent to confer legislative functions as well as administrative power, and that it was the purpose of the act of March 12, 1887, (84 O. L. 75), commonly known as the Trunk Sewer Act, to give the board of public affairs the jurisdiction and power to take all the steps required by law to acquire, by condemnation proceedings, the rights of way, and to order the construction of trunk sewers by passing the resolution declaring it necessary to improve, the ordinance to improve, the resolution to contract and to make the contract, and afterwards levy the assessment.

The court having thus given a construction to the trunk sewer act and defined the jurisdiction and power of the board of public affairs, the next question to be considered is whether the petition is demurrable on the ground that it does not allege that the sewers provided for by the resolution and ordinance of the board of public affairs are trunk sewers. An allegation that the sewers in question are trunk sewers, perhaps, would be a mere conclusion, for the court is to determine, from the character and description of the sewer, whether or not it is a trunk sewer.

The definition of a local sewer is found in section 2397, Revised Statutes, and is as follows: "No sewer shall be considered local, except such as are intended for and used exclusively for the drainage and accommodation of lots abutting thereon." Section 2371 uses the words "main or trunk sewer," in such a manner as would seem to indicate that the legislature construes the terms "main" and "trunk" as synonymous, while section 2370 declares that "each of the districts shall be designated by name and number, and consist of one or more principal sewers having their outlet in a river or other proper place."

It is said that the petition shows that the board of public affairs re-

garded the sewers as trunk sewers, and so passed the resolutions and ordinances, and, as recited in the petition, provided for such sewers under the provisions of the acts of the general assembly passed March 12, 1887, entitled "An Act for the Construction of Trunk Sewers in Cities of the First Grade of the First Class." The declaration of the board of public affairs can not be regarded as conclusive, because, after all, it may be said to be a question of fact. Nor does the fact that the resolution to improve, provided that the excess of cost over and above the amount to be assessed upon the abutting property should be paid out of the trunk sewer fund, as stated in the petition, show that these sewers were trunk sewers. Such a provision in regard to the payment of the excess of cost would not show that they are trunk sewers, but could only be claimed to show that the board of public affairs treated them as such.

It is for this court to say from the character and description of these sewers as set out in the petition, whether they *prima facie* appear to be trunk sewers. Words sufficiently descriptive must be employed, and, while it is not necessary to determine in this case what is a trunk sewer, it is the opinion of this court that the allegations of the petition in this case do not bring the sewers referred to within the provisions of the Trunk Sewer Act.

The demurrer, therefore, will be sustained, with leave to amend within twenty days, and the cause remanded to Special Term for further hearing.

The same order may be taken in case No. 45922, The City for the use of John F. Deters v. The Standard Wagon Co. et al.

No. 46039, The City, for the use of John F. Deters v. Wagner et al.
No. 46094, The City for the use of John F. Deters v. Droll et al.
No. 46196, The City for the use of John F. Peters v. Wilder et al.

MOORE and SMITH, JJ., concur.

*Healey & Brannan*, for demurrer.
*Drausin Wulsin* and *John Galvin*, for the plaintiffs.